UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHRISTOPHER DAWSON-ROBERTS,

Plaintiff,

v.

NORMAN S. WRIGHT MECHANICAL
EQUIPMENT LLC, et al.,

Defendants.

Case No. 26-cv-01171-AGT

**ORDER ON MOTION TO DISMISS**

Re: Dkt. No. 13

Norman S. Wright Mechanical Equipment LLC, referred to in this order as "Norman S. Wright" or the "Company," offers employees retirement benefits through an employee stock ownership plan ("ESOP"), "a type of pension plan that invests primarily in the stock of the company." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 412 (2014). The ESOP holds not only Norman S. Wright stock but also other assets in an Other Investments Account ("OIA"). Compl. ¶ 19. Between 2021 and 2024, the OIA allegedly grew from $4.1 million to $11.9 million and was invested entirely in cash equivalents. *Id.* ¶¶ 29, 33.

Plaintiff Christopher Dawson-Roberts worked for Norman S. Wright from 2015 until 2022. *Id.* ¶ 3. He is an ESOP participant and alleges that his ESOP account would be worth more today if Defendants (who consist of the Company, the ESOP's governing Committee, and the Committee's three members, who are also members of the Company's board of

directors) had invested OIA assets in more appropriate asset classes for long-term retirement savings, such as stocks and bonds. *Id.* ¶¶ 3, 6–10, 33–56. By investing the entire OIA in low-yielding cash equivalents, he contends that Defendants breached their duties of prudence and loyalty and engaged in prohibited transactions under ERISA, 29 U.S.C. § 1001 *et seq*. He also alleges that Defendants breached a duty of disclosure by failing to communicate with ESOP participants about how the Company's 2024 conversion from an S corporation to a limited liability company would affect the ESOP. Compl. ¶¶ 112–15, 162.

Defendants have moved to dismiss the complaint. Dkt. 13. In evaluating their motion, the Court takes the well-pleaded factual allegations in the complaint as true, construes them in the light most favorable to the nonmoving party, and evaluates whether they state a plausible claim for relief. *Fort v. Washington*, 41 F.4th 1141, 1144 (9th Cir. 2022). Doing so, the Court concludes that Plaintiff has stated plausible claims for relief, with the exception of the duty-to-disclose claim that is based on the 2024 corporate conversion.

* * *

***Article III Standing***. Defendants begin by asserting that Plaintiff hasn't alleged an injury-in-fact because his ESOP account has increased in value. The weight of authority cuts against this argument. Plaintiff is pursuing a theory of "relative loss," alleging that his ESOP account "would have more money in [it] today if Defendants had not made the challenged investments." *Johnson v. Carpenters of W. Washington Bd. of Trs.*, No. 23-35370, 2024 WL 3579492, at *1 (9th Cir. July 30, 2024). This is a valid theory of injury. *See id.*

Although Plaintiff's ESOP account "did not suffer an absolute loss (i.e., [it] [has] more money in [it] today than [it] did in [2021]), absolute loss is not a requirement of concrete injury." *Id.*; *see also Gonzalez v. Northwell Health, Inc.*, 632 F. Supp. 3d 148, 159

2

(E.D.N.Y. 2022) ("[A] financial loss in comparison to what a plaintiff might have received . . . can support a cognizable injury regardless of whether the plaintiff suffered an actual loss on her investment or simply realized a more modest gain.") (citation modified). Plaintiff has identified an injury-in-fact and has standing to pursue his claims.

**Duty of Prudence.** Plaintiff plausibly alleges that the Committee Defendants (who consist of the ESOP Committee and its three members) breached their duty of prudence. Between 2021 and 2023, the Committee Defendants "left the entire OIA balance in cash equivalents that earned little or no interest, generating income less than $400 each year on millions of dollars in assets." Compl. ¶ 33. In those years, the Committee Defendants "did not bother to even obtain market interest rates for cash investments." *Id.* ¶ 46.

Then in 2024, even though the Committee Defendants reinvested the OIA balance, they did so by investing in "other highly conservative cash equivalent accounts that yielded [only] modestly higher returns." *Id.* ¶ 33. "If Defendants had invested the OIA in a balanced portfolio that included stocks or an index fund tracking the S&P 500 between February 2021 and January 2026, the Plan would have earned millions of dollars more than the minimal returns achieved from cash holdings." *Id.* ¶ 47.

The Committee Defendants' decision to leave millions of dollars of ESOP assets in cash equivalents for years supports a plausible imprudence claim. Fiduciaries must evaluate an investment in light of "appropriate investment horizons consistent with the plan's invest-ment objectives[.]" 29 C.F.R. § 2550.404a-1(b)(4). Here, the ESOP was designed to provide retirement benefits and had a long-term investment horizon. Compl. ¶¶ 22–23, 50–52, 70–72. By investing the OIA exclusively in cash equivalents, which generate much lower long-term returns than investments in stocks and bonds, *id.* ¶¶ 63–67, 77–78, the Committee

Defendants plausibly disregarded the ESOP's objective.

Plaintiff has done more than allege that Defendants "could have obtained better results . . . by choosing different investments." *Anderson v. Intel Corp. Inv. Pol'y Comm.*, 137 F.4th 1015, 1021 (9th Cir. 2025), *cert. granted*, 223 L. Ed. 2d 553 (Jan. 16, 2026). Plaintiff alleges "an objective 'mismatch' between the Plan's assets and its purpose as a retirement plan." *Moran v. ESOP Comm. of the Aluminum Precision Prods., Inc.*, 2026 WL 235573, at *4 (C.D. Cal. Jan. 28, 2026). This mismatch plausibly suggests an imprudent investment process. *See, e.g.*, *id.* at *2–5 (denying motion for judgment on the pleadings as to prudent-investor claim when plaintiff alleged that the defendant invested ESOP OIA assets exclusively in a money market fund for several years); *Chrupcala v. Firstrust Sav. Bank*, 2026 WL 927226, at *4 (E.D. Pa. Apr. 6, 2026) (holding that plaintiff plausibly alleged a duty-of-prudence claim when defendant invested defined contribution plan assets exclusively in cash equivalents, a decision which didn't give "appropriate consideration to the Plan objectives or to participants' long-term investment needs") (citation modified).

Section 1104(a)(2) of Title 29 doesn't bar Plaintiff's duty of prudence claim. Under § 1104(a)(2), an ESOP fiduciary's investment in the employer's stock cannot be challenged as imprudent on the basis of insufficient asset diversification. This carveout from ERISA's diversification requirement reflects that "[a]n ESOP is a type of ERISA plan 'designed to invest primarily in' the stock of the employer who created it." *Johnson v. Couturier*, 572 F.3d 1067, 1076 (9th Cir. 2009) (quoting 29 U.S.C. § 1107(d)(6)(A)).

But "§ 1104(a)(2) is limited to diversification-based objections to the 'acquisition or holding' of 'qualifying employer securities' or real property[;] it does not, by its terms, immunize the management of non-employer-security assets such as the OIA from scrutiny

under § 1104(a)(1)'s duty of prudence." *Moran*, 2026 WL 235573, at *4; *see also id.* at *3 ("Because the statutory purpose of an ESOP is to encourage employees' ownership of their employer's stock, of course an ESOP fiduciary should not face liability for putting too many eggs in the 'company stock' basket. But that rationale does not clearly extend to the other assets within an ESOP which do not reflect employee ownership.") (citation omitted).

At least one district court held differently, concluding on a motion to dismiss that § 1104(a)(2)'s exception to ERISA's diversification requirement applies not only to an ESOP's holdings of company stock but also to "the ESOP cash buffer." *Trull v. Bd. of Trs. of McCreary Mod., Inc. Emp. Stock Ownership Plan*, 2025 WL 2803605, at *3 (W.D.N.C. Oct. 1, 2025), *appeal docketed*, No. 25-2337 (4th Cir. Nov. 3, 2025). In reaching that conclusion, however, the *Trull* court didn't engage with the text of § 1104(a)(2), as the *Moran* court did; and the *Trull* court overemphasized, at least at the pleading stage, potential risks to the company of keeping a low OIA cash balance. *See id.* ("Had the cash buffer been de minimis, as Trull suggests . . . , the Plan may have been unable to adequately pay departing employees or repurchase shares."). Although ESOP fiduciaries may have good reasons for keeping high OIA cash balances, those reasons are more appropriately considered on a full factual record, not on a motion to dismiss.

Indeed, the Committee Defendants insist that they had a prudent reason for keeping the OIA funds in cash equivalents. Namely, the "cash buffer" provided liquidity so the ESOP could repurchase Company stock from employees upon retirement or separation from the Company. Mot., Dkt. 13 at 14; *see also id.* at 7, 15. Plaintiff, however, alleges that a sizeable cash buffer wasn't necessary because the ESOP "had the ability to fund [stock] repurchases entirely through new cash from profit distributions and other Plan income." Compl. ¶ 102;

*see also id.* ¶ 103 ("The withdrawal terms of the Plan and earnings projections used by the Plan fiduciaries would have demonstrated to a prudent fiduciary that the Plan had far more accumulated earnings than it could spend on near-term repurchases.").

As the case progresses, the Committee Defendants may be able to prove their theory and discredit Plaintiff's. But at the pleading stage, the Court must accept Plaintiff's factual allegations as true, *Fort*, 41 F.4th at 1144, including Plaintiff's allegation that there wasn't a need to hold such a large OIA cash reserve. *See Schultz v. Aerotech, Inc.*, 2025 WL 563585, at *9 (W.D. Pa. Feb. 20, 2025) ("The specific factual context of the Aerotech ESOP may justify the cash equivalent strategy, including, for example, its share price outlook, antici-pated retirements or separations of participants, expected payout amounts, etc. Those (cur-rently unknown) facts, however, are not apparent from the Amended Complaint and would not be appropriate for consideration at this stage of the case.") (citation omitted). Plaintiff has stated a plausible duty-of-prudence claim.

***Duty of Loyalty*.** Plaintiff also alleges that the Committee Defendants breached their duty of loyalty. His theory is that the Committee Defendants didn't manage the ESOP "solely in the interest of the participants and beneficiaries," as ERISA requires. 29 U.S.C. § 1104(a)(1). Rather, they managed the ESOP for the purpose of easing corporate liabilities. Even though maintaining a large OIA cash balance wasn't in the long-term interest of ESOP participants, the Committee Defendants kept the large OIA cash balance "for the purpose of relieving [the Company] from its" obligation to repurchase shares of company stock distrib-uted to departing ESOP participants. Compl. ¶ 153.

In other words, the Committee Defendants kept millions of dollars of cash in the OIA to serve as "a backup reserve." Opp'n, Dkt. 16 at 26. The reserve "reduc[ed] pressure on the

Company's cash flow," *id.*, which benefited the company, but at the expense of the ESOP participants, who "would have earned millions of dollars more" if the Committee Defendants had invested the OIA "in a balanced portfolio" of stocks and bonds, Compl. ¶ 47.

By prioritizing the Company's interests over the ESOP participants', the Committee Defendants plausibly violated the duty of loyalty. *See Reich v. Compton*, 57 F.3d 270, 291 (3d Cir. 1995) ("[T]rustees violate their duty of loyalty when they act in the interests of the plan sponsor rather than 'with an eye single to the interests of the participants and beneficiaries of the plan.'" (quoting *Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir. 1982))).

***Prohibited Transactions.*** Plaintiff next alleges that all Defendants entered into prohibited transactions under 29 U.S.C. § 1106(a)(1)(D) and (b)(1) by "stockpil[ing] cash in the ESOP" to "reliev[e] [the Company] from its obligation to repurchase shares when employees request[ed] a distribution from the ESOP and/or to have ready cash available to purchase [the Committee Defendants'] equity interest in the Company at a later date." Compl. ¶¶ 145, 153. Defendants move to dismiss the § 1106 claims because, in their view, the complaint doesn't identify a "transaction." They maintain that "hold[ing] Plan assets in an investment is not a 'transaction' for purposes of [29 U.S.C. § 1106]." Mot., Dkt. 13 at 17.

Defendants are correct that holding an investment position isn't a "transaction" under § 1106. *See Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1101 (9th Cir. 2004) (affirming dismissal of § 1106 claim; "[t]he decision . . . to *continue* to hold 15% of Plan assets in employer stock was not a 'transaction'"). But Plaintiff alleges more. He alleges that in 2024, the Committee Defendants "transferred the [ESOP's] OIA assets" from "cash equivalents that earned little or no interest" to "other highly conservative cash equivalent accounts that yielded modestly higher returns." Compl. ¶ 33. That transfer of funds plausibly

constituted a "transaction" under § 1106. *See Moran*, 2026 WL 235573, at \*6 ("Defendant moved approximately half of the OIA from a money market fund into a short-term treasury fund. Courts have recognized that such affirmative purchases suffice to satisfy the 'transaction' component of a § 1106(a) claim, even where a defendant argues the allegations otherwise resemble a mere decision to continue a certain investment strategy.") (citation omitted). Plaintiff has stated plausible claims under § 1106.

*Individual Defendants.* As held above, Plaintiff has plausibly alleged claims against the Committee Defendants. The Committee Defendants include the Committee and its three members, Richard Leao, Robert Beyer, and Salvatore Giglio. Compl. ¶¶ 4–9. To be clear, the Court confirms that Plaintiff's allegations are sufficient to state claims not only against the Committee itself, but also against its members, the Individual Defendants.

The Individual Defendants were plausibly ESOP fiduciaries. Under ERISA, a person is a plan fiduciary if he exercises "authority or control respecting management or disposition of [plan] assets." 29 U.S.C. § 1002(21)(A)(i). Plaintiff alleges that the Individual Defendants exercised such authority and control. As Committee members, they were "responsible for holding and investing Plan assets and for directing the investment of ESOP assets." Compl. ¶¶ 6–8. The Individual Defendants also plausibly breached their fiduciary duties by making the investment decisions at issue in this case. *See id.* ¶¶ 33, 37–38.

Plaintiff's allegations are sufficient to survive a motion to dismiss. "Plaintiff[] [is] not required, as the . . . Defendants contend, to set forth specific allegations as to each individual board member. It is sufficient to allege that each individual was a member of the [Committee] and then allege specific actions taken or not taken by the [Committee] that constitute violations of ERISA." *Del Castillo v. Cmty. Child Care Council of Santa Clara*

*Cnty., Inc.*, No. 17-CV-07243-SVK, 2018 WL 11361335, at *20 (N.D. Cal. Nov. 19, 2018).

***Duty to Monitor.*** Plaintiff plausibly alleges that the Company is liable for failing to monitor the ESOP Committee. Norman S. Wright, "as the appointing fiduciary, had a duty to monitor the performance of the Committee Defendants, and [to] remove individual Committee members who were not prudently investing the Plan's OIA assets." Compl. ¶ 56; *see Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, 250 F. Supp. 3d 460, 466 (N.D. Cal. 2017) ("Implicit within the duty to select and retain fiduciaries is a duty to monitor their performance.") (quoting another source). The Company plausibly breached that duty. Even though the Committee Defendants didn't prudently invest OIA assets, the Company didn't remove them or seek to change their investment decisions. Compl. ¶¶ 5, 138.

Defendants contend that Plaintiff's duty-to-monitor claim fails because it is derivative of the fiduciary-duty claims and Plaintiff hasn't plausibly alleged an underlying breach of fiduciary duties by the Committee Defendants. Reply, Dkt. 19 at 18. As held above, Plaintiff has stated actionable fiduciary-duty claims against the Committee Defendants. Thus, the basis for Defendants' challenge to the duty-to-monitor claim doesn't hold.

***Co-Fiduciary Liability.*** Plaintiff alleges that "[e]ach Defendant is also liable for the fiduciary breaches of the other [Defendants] under 29 U.S.C. § 1105 as a co-fiduciary." Compl. ¶ 140. In moving to dismiss this claim, Defendants state only that the co-fiduciary claim fails because it is a "purely derivative claim" and Plaintiff hasn't stated an actionable underlying claim for breach of the duties of prudence, loyalty, or to monitor. Dkt. 13 at 17. As the Court held above, Plaintiff *has* stated actionable underlying claims. The Court accordingly rejects Defendants' argument for dismissal of the co-fiduciary liability claim.

9

***Duty to Disclose.*** Plaintiff's final claim is based on a different factual predicate than his other claims. While his other claims focus on the Committee Defendants' decision to keep the OIA invested entirely in cash equivalents, his final claim relates to the Company's 2024 conversion from an S corporation to a limited liability company. *See* Compl. ¶¶ 109–116, 157–165.

Plaintiff alleges that the conversion was "potentially detrimental to the ESOP and Plan participants." *Id.* ¶ 114. In the conversion year, the ESOP received approximately $2.0 million less in profit distributions from the Company than in the two previous years, despite no decline in the Company's financial performance. *See id.* ¶ 115. Plaintiff suspects that the corporate conversion may have caused the decline because, as alleged, the LLC units are not subject to the same *pro rata* profit distribution protections as the S corporation shares. *Id.* ¶ 14. Plaintiff doesn't contend that the corporate conversion itself was unlawful. Rather, Plaintiff maintains that Defendants violated ERISA "by failing to inform Plan participants of the Company's conversion from an S Corporation to an LLC and the impact the conversion would have on the ESOP." *Id.* ¶ 162.[1]

A corporate conversion that potentially reduces the employer's ESOP contributions is analogous to "a decision regarding the form or structure of the Plan such as who is entitled to receive Plan benefits and in what amounts, or how such benefits are calculated." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999). ERISA's fiduciary duties don't apply to this sort of decision. *Id.*; *see also Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996)

---

[1] Plaintiff styles the claim as a claim for equitable accounting, which is the remedy Plaintiff seeks—"an accounting of the conversion of the ESOP's shares to LLC units . . . and subsequent profit distributions." Compl. ¶ 165. The underlying ERISA violation that is alleged, however, is a breach of a duty to disclose. *See id.* ¶ 162; Opp'n, Dkt. 16 at 32 ("Plaintiff asserts that Defendants failed to properly communicate with Plan participants about a transaction in which the ESOP participated.").

("Plan sponsors who alter the terms of a plan do not fall into the category of fiduciaries. . . . [E]mployers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans [or pension benefit plans]. When employers undertake those actions, they do not act as fiduciaries, but are analogous to the settlors of a trust.") (citation modified). Plaintiff, then, hasn't identified a viable source for the duty of disclosure that he claims Defendants violated. Defendants didn't plausibly breach any fiduciary duties when they didn't "inform Plan participants of the Company's conversion from an S Corporation to an LLC." Compl. ¶ 162.

In arguing otherwise, Plaintiff relies on *Varity Corp. v. Howe*, 516 U.S. 489 (1996), a case in which the plan administrator made misleading statements to beneficiaries about a proposed plan conversion. In that context, the Court held that fiduciary duties applied and prohibit the misrepresentations, even though the representations related to a plan conversion, which is a transaction typically undertaken by a settlor, not a fiduciary. *See id.* at 504–05. Here, in contrast, no misrepresentations are alleged. Plaintiff is instead advocating for an affirmative duty to disclose, but he hasn't cited authority for that duty in the settlor context.

ERISA includes "a comprehensive set of 'reporting and disclosure' requirements." *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995) (citing 29 U.S.C. §§ 1021– 1031). Among them, ERISA requires plan administrators to file an annual report (known as a Form 5500), which must include financial statements and notes that describe "any significant changes in the plan made during the period and the impact of such changes on benefits." 29 C.F.R. § 2520.103–1(b)(3).

Perhaps the information that Plaintiff seeks about the Company's corporate conversion should have been included in the Company's Form 5500 for the conversion year.

11

Plaintiff alleges so in his complaint. *See* Compl. ¶¶ 112–13 (alleging that the Company's 2024 Form 5500 was "incomplete" and should have included "an auditor's opinion"). But Plaintiff isn't pursuing a claim for violation of ERISA's reporting requirements. *See* Opp'n, Dkt. 16 at 32 ("Plaintiff does not seek to enforce the requirement of filing a complete Form 5500."). Rather, Plaintiff is pursuing a fiduciary duty-to-disclose claim. He hasn't identified a valid legal basis for that claim.

* * *

The Court grants Defendants' motion to dismiss Plaintiff's duty-to-disclose claim. With that exception, the Court denies Defendants' motion to dismiss. If Plaintiff seeks to amend his duty-to-disclose claim, he may do so on or before July 14, 2026. He may not add any new claims without leave of Court. If Plaintiff doesn't file an amended complaint by July 14, 2026, Defendants must answer the currently operative complaint by July 21, 2026.

**IT IS SO ORDERED.**

Dated: June 25, 2026

Alex G. Tse
United States Magistrate Judge